THE STATE *v.* WILLIAM PRINCE, GEORGE PRINCE and JOHN McKINLEY.

Where, upon trials for capital offences, questions arise as to the propriety of discharging the jury without a verdict: whether a *necessity* exists for such discharge is a matter to be decided by the Judge presiding at such trial; and it is his duty to ascertain the facts which constitute such necessity.

The exercise of such discretion in any particular case of discharge may be appealed from, and in such case the finding of the *facts* in the Court below is conclusive, leaving the law as deduced from such facts, to be reviewed.

In a case where three persons were upon trial for murder, the prisoners proposed. that they should be examined as witnesses for each other. The State objected, but the Court allowed the motion; thereupon the Solicitor appealed, and the Court, to allow him such appeal, against the objection of the prisoners withdrew a juror and made a mistrial; *Held,* to have been an erroneous exercise of discretion, and that thereupon the prisoners were entitled to a discharge.

(*State* v. *Rose,* Phil. 406, cited and approved; *State* v. *Garrigues,* 1 Hay. 241, Spier's case, 1 Dev. 491, *State* v. *Ephraim,* 1 D. & B. 162, considered, and doubted.)

. MURDER, tried before *Cannon, J.,* at Spring Term, 1869, of the Superior Court of CHEROKEE.

The facts appear sufficiently stated in the Opinion.

*Attorney General,* for the State.

No counsel *contra.*

RODMAN, J. This was an indictment found at Spring Term 1869 of the Superior Court of Cherokee, against William Prince, for murder, and against two other prisoners, as being present aiding and abetting. The prisoners pleaded not guilty; the jury were sworn and empanelled; the witnesses for the prosecution and the defence were sworn. Before any of them had been examined, " the prisoners' counsel proposed that they should be examined as witnesses for each other;" the Solicitor objected, but the Judge decided that each was entitled to be examined for or against the others. From this decision the Solicitor for the State appealed, and his appeal was allowed. On motion of the Solicitor and against objections by the prisoners, the Judge ordered the withdrawal of a juror and a mistrial, and that the jury be discharged. Thereupon the counsel for the prisoners moved for their discharge, which was refused; and the prisoners appealed.

The record makes it necessary to consider what is the effect of the discharge of a jury charged with a capital case, without their having rendered a verdict. At the outset we are met by four decisions of this Court, or of the Judges of this Court, all made after full argument and deliberation, and all substantially coinciding.

The cases alluded to are: *State* v. *Garrigues,* 1 Hay. 241, *In the matter of Spier,* 1 Dev. 491, *State* v. *Ephraim,* 1 Dev. & Bat. 162, and the case of *Slaughter,* cited in that case.

Our great respect for the eminent Judges who decided those cases should not prevent us from reviewing with freedom their opinions on so important a question; and we do so the more readily, because in a more recent case in England, the whole subject has been ably and thoroughly examined, and a conclusion come to materially different from that asserted by our Court. We by no means propose to trace the doctrine on this subject, or to refer to the authorities any farther than may be necessary; all the English are cited in *Newton's case,*

13 A. & E. N. S. 717, (66 E. C. L. R. 716); and the most important American are referred to in the note to that case in the American edition, and in the cases in our own reports cited above.

That no person for the same offence can be twice put in jeopardy of life or limb, is a sacred principle of the common law. As a consequence of this principle, it was held in England at an early period, that " a jury, sworn and charged in case of life or member cannot be discharged by the Court or any other, but they ought to give a verdict." Coke Litt. 227–6, and 3 Inst. 110. If in such a case the jury should be discharged, and separate, as the prisoner could not be tried again, he was entitled to be at liberty. But it was soon seen to be necessary to make exceptions to the general rule: cases occurred in which the benefit of the prisoner required the rigor of the rule to be departed from; and others in which an inflexible adherence to it would have resulted in a palpable and discreditable failure of justice. Some of the exceptions will be found discussed in *the Kinlochs' case*, Foster ,22. The question first came before this Court in *State* v. *Garrigues* in 1795, and for the second time in *the matter of Spier*, in 1828. In this last case in which the jury separated by reason of the expiration of the term of the Court, *Hall, J.*, limits the exceptions to " such as are under no human control, but are the offspring of necessity; as where a juror is taken suddenly sick, where a woman is taken in labor, where the prisoner becomes insane, or where the jury are discharged by consent of the prisoner." *Taylor, C. J.*, limits the exceptions in very similar language, and the Judges unanimously refused to add to them the cause of discharge which existed in that case.

In *State* v. *Ephraim*, Ruffin, C. J., says: " We think there is no such discretion (that is in the Judge to discharge the jury,) and that the jury cannot be discharged without the prisoner's consent, but for evident, urgent, overruling necessity, arising from matter occurring during the trial, which was beyond human foresight and control."

It is admitted by Foster, C. J., (in the *Kinlochs'* case), and by Taylor, C. J., (in *Spier's* case) that it is impossible to lay down a general rule which may be applicable to all cases that may occur. However imposing the expression "evident, urgent and overruling necessity" may appear at first sight, the qualifying adjectives therein add to the noun with which it closes, little of certainty or force. It must be left to the Judge in each case to pass on the existence of the "necessity," and whether it is "evident, urgent and overruling."

As remarked by Coleridge, J., in *Newton's* case, "When once you qualify the word 'necessity' by speaking of it as more or less pressing, you admit that the word is not accurately used. A power to be exercised in case of a more or less pressing necessity, is in truth a discretionary power not to be exercised without strong reasons." Again, he says: "The use of the word 'necessity' has been sanctioned by such high authorities that it is almost presumptuous to remark on it: I think however it cannot be taken to mean necessity in the strict, absolute sense of the word. The true question I think in all cases is, whether the whole circumstances of the case were such as to make the act of the Judge in discharging the jury, a proper exercise of his judicial discretion." Erle says: "I think it (necessity) means not an absolute impossibility to avoid discharging the jury; but merely need in a high degree," of which the Judge is to decide. The principle, like many others in law, being incapable of adequate definition, can only be derived by laying down the general rule, and then excepting from it all such cases as there is sufficient reason for, as they occur. We would make such necessity as existed in the case of Spier an exception. As the law now stands, the same cause cannot again occur in a capital case, for the Court may be continued beyond the term: but there is no such provision as to other felonies, and as respects them, although a Judge should take proper care to avoid such a necessity, yet if it shall arise notwithstanding, we think it would justify the discharge of the jury, and that the prisoner might be tried again. It was held in several cases cited in

*Newton's* case, contrary to the holding in *State* v. *Ephraim*, that the illness of a juror was a sufficient necessity; and in that case, the prisoner being on trial for murder, the jury being unable to agree after a deliberation of about thirty-six hours, were discharged; and it was held that the cause was sufficient, and that she might be tried again.

But while we agree that the power of the Judge must from its nature be exercised at his discretion, we must not be understood to mean a capricious discretion, or one for which no sufficient reasons are assigned. The discharge of the jury is an act of judicial discretion, and the facts which induce it must be set forth on the record, so that the decision may be made the subject of review on appeal. In *Newton's* case, the Judges generally doubted whether an exercise of the power could be reviewed. We think clearly it may: every decision implies the finding of a state of facts, and the conclusion of law upon it: the finding of the Judge upon the first is final; (*State* v. *Ephraim*, 2 Dev. & Bat. 175;) on the latter it may be appealed from.

We have to consider then whether there was any sufficient cause for the discharge of the jury in this case. None at all is assigned by the Judge. True, the Solicitor had attempted to appeal from the ruling of the Judge on a question of the competency of the prisoners as witnesses for each other—a ruling which we may say in passing, was admitted in this Court by the Attorney General to be correct, *State* v. *Rose*, Phil. 406—but whether he could have appealed for such a cause after final judgment or not, it is clear he could not at that stage of the trial, nor with the effect of stopping the trial until his appeal was decided. Such a practice is unknown, and if it prevailed, trials would be procrastinated indefinitely, and infinite wrong would result.

We think the prisoners, having been once put in jeopardy and the jury discharged without cause, cannot be tried again, and are entitled to their discharge.

Let this opinion be certified.

PER CURIAM.                    Order accordingly.