The petition for the writ of certiorari to bring up the record of proceedings in the superior court of Craven, *Page 536 
with a view to the discharge of the prisoner, contains the following statement of facts:
The prisoner was put on trial under an indictment for murder, and a jury sworn and impanelled, when a short recess was taken. Upon the reassembling of the court, and before any evidence in support of the charge had been offered, the solicitor moved for the withdrawal of a juror and a mistrial, for the alleged reason that two jurors, whose names were mentioned, had fraudulently procured their admission into the panel on a false oath of indifferency, for the purpose of securing the acquittal of the accused. The court heard testimony upon the matter, found as a fact and declared the charge against the jurors to be true, and, as a conclusion of law, that the jury had been "impanelled by the fraud of the prisoner, or of some one on his behalf, with a view to the prisoner's acquittal. A juror was thereupon withdrawn, and a mistrial ordered. The prisoner did not consent to this action, but protested against it, avowing his disbelief of the charge, and, if true, any participation in it.
The cause was then, on application of the state, removed to Pamlico county for trial: and the sole inquiry for us to make is as to the legal effect of the discharge of the jury, under the circumstances, upon the rights of the accused, and whether the court shall interpose at this stage of the prosecution and discharge the prisoner without trial.
The defence, if in law effectual, may be made available by special plea on the trial of the indictment, without depriving the prisoner of his right to be tried on the plea of not guilty, if the first shall be held insufficient; and all the rulings upon conviction may be reviewed on the appeal. State v. Swepson, 79 N.C. 632; State v. Swepson, 81 N.C. 571;State v. Pollard, 83 N.C. 597; State v. Respass, 85 N.C. 534.
No injury can, therefore, result to the prisoner from our refusal to intervene and arrest the prosecution; while, if the averments made in the application of his innocence be true, *Page 537 
and the jury so find, an erroneous ruling as to the legal consequences of the disbanding of the jury will be rendered harmless.
It does not appear, moreover, though the order for a mistrial was strenuously resisted, that any motion was then made for the prisoner's discharge, and denied. Still, if his claim to be exempt from exposure to another trial, because it would be putting him in jeopardy a second time upon the same bill or for the same offence, be valid, he is entitled to summary relief, and should not be compelled to undergo another useless and illegal trial, with the long imprisonment and other inconveniences preceding it.
We are not prepared to concede that the course pursued by the court was in excess of the authority conferred by law to conduct the trial, so as to secure a fair and just verdict, as due alike to the public and to the accused. It would be a great defect in the administration of distributive justice if, upon discovering an attempted fraud in the organization of the jury to accomplish a conviction or acquittal of the accused, at the very inception of the trial, the presiding judge is powerless to correct the wrong and must proceed and allow the fraud to be consummated and crime to go unpunished. This would be, in the forcible language of Mr. Justice ASHE, to make "the trial by jury became a farce and the administration of justice a mere mockery." State v. Bell, 81 N.C. 591.
It is the clear duty of the presiding judge, in the language of the same opinion, "to see that there is a fair and impartial trial, and to interposehis authority to prevent all unfair dealing and corrupt and fraudulentpractices on the part of either the prosecution or the defence."
Admitting the right and duty of the judge to interpose and stop the trial when the fraud is contrived or known to and participated in by the prisoner, his counsel press upon us a qualification of the general proposition that he power can only be exercised when the prisoner is in privity with the attempt, and that the trial must go on to a verdict, however gross the fraud, in the absence of evidence of the prisoner's connection with it. *Page 538 
We should hesitate to give assent to a distinction relating to the exercise of the power, and fruitful in consequences so hurtful to the healthy administration of the law and injurious to the cause of public justice.
While the earlier decisions in this state very greatly restrict the authority of the court to discharge a disagreeing jury, impanelled to pass upon life, and deny its exercise without the prisoner's consent, except, in the language of Chief Justice RUFFIN, "for evident, urgent, overruling necessity arising from some matter occurring during the trial, which was beyond human foresight and control" (State v. Garrigues, 1 Hay., 241;Spier's case, 1 Dev., 491; State v. Ephraim, 2 Dev. Bat., 162.); yet, the doctrine is modified in later cases, and it is held that the jury, after ample time for deliberation, being unable to come to an agreement, upon the fact being satisfactory shown, may be discharge, and the prisoner be again tried upon the same bill. State v. Prince, 63 N.C. 529; State v.Jefferson, 66 N.C. 309; State v. Honeycutt, 74 N.C. 391.
But besides a physical necessity, such as is created by the sickness of the judge or a juror, which incapacitates him from going on and performing his duties, there is recognized, as equally controlling, a necessity arising "from the duty of the court to guard the administration of justiceagainst fraudulent practices." State v. Bailey, 65 N.C. 426: State v.Wiseman, 68 N.C. 203.
But a case in its facts very similar to the present is found in State v.Bell, 81 N.C. 591, to which we shall briefly refer:
After the jury were formed, and before they had heard any evidence, the solicitor asked for a mistrial, which was ordered, the court finding from the testimony that a juror had intruded himself into the jury box, through the prisoner's procurement and over a violated oath, for the purpose of bringing about an acquittal. This ruling was upheld in this court as a proper and competent exercise of judicial power, and the prisoner was held to meet the charge.
It is true that, there, the prisoner was personally connected *Page 539 
with the criminal conduct of the juror, while in our case this is not proved; but we can see little difference between the cases when his agency precedes the committal of the fraud, and when he seeks afterwards to secure its results to himself, as calling for the direct and prompt interference of the court in prevention.
The necessity of maintaining the dignity and integrity of the court, and assuring the firm and impartial administration of justice, is the necessity which calls for and justifies a prompt repression of the intended fraud; and this necessity exists in either case.
Without intending in any manner to prejudice this defence of the prisoner when again put on trial, we feel constrained to refuse the summary relief which he now asks, for the reasons already given.
PER CURIAM. Motion denied.