## STATE v. THOMAS JENKINS.

*Jurors—Misconduct of Jury—Use of Intoxicants During Deliberation on Verdict—Void Verdict—Mistrial.*

1. Jurors, while in the discharge of their duties, must be temperate and in such condition of mind as to enable them to discharge their duties honestly, intelligently and free from the influence and domination of strong drink.

2. Where jurors purchased and drank whiskey and "some of them were under its influence" while deliberating on their verdict, the verdict returned by the jury was null, and a mistrial should have been entered and a new trial granted to defendant against whom such verdict was rendered.

The defendant was convicted upon the trial of an indictment for injuring stock running at large, at Fall Term, 1894, of BEAUFORT Superior Court, before *McIver, J.*, and moved for a new trial upon the ground of misconduct of the jury. Upon affidavits submitted by both the State and the defendant the Court found the following facts :

" The Court charged the jury before dinner, and they immediately returned to the jury room, which was on the lower floor of the court house, where they remained until supper time. At supper time the Court instructed the sheriff to give the jury supper. The sheriff took them in a body down town and carried them to Mrs. Smith's restaurant, where they got supper. They stopped at Wright's, on the way back to the court house, and got some cigars or tobacco. They went upstairs in the court room on their return, and a Deputy Sheriff was placed with them. On that night the jury had some whiskey, one a pint and another a quart. Nearly all of them drank of this whiskey. Some of them were under its influence. The next morning being Saturday morning, the jury having been put in the grand jury room, on the lower floor of the court house, some whiskey was passed through the window into the room. All the whiskey which the jury drank was purchased by them. There was no allegation, proof or evidence that there was any outside influence brought to bear upon the jury, or that there was any improper influence, and no other misconduct on the part of the jury, except as above stated. The jury returned a verdict about ten o'clock Saturday morning."

The motion was overruled, and the defendant excepted and appealed from the judgment pronounced, assigning as error the refusal of His Honor to grant a new trial on account of the misconduct of the jury.

*Messrs. Attorney General* and *W. B. Rodman,* for the State.

*Mr. Charles F. Warren,* for the defendant (appellant).

MONTGOMERY, J.: The question for determination 'is, do the findings of His Honor show such misconduct on the part of the jury as to vitiate the verdict, and to make *it in*

*law* no verdict? For otherwise the verdict would simply be erroneous, and, therefore, under the final control of the Judge below as to his discretion in granting or refusing a new trial. The answer to the question depends most largely upon the proper construction of the words, "Nearly all of them drank of this whiskey, some of them were under its influence." We think the fair, reasonable and natural meaning of these words is that some of the jurors were under the controlling power, sway and ascendancy of the whiskey which they drank. This being so, they were in a condition which unfitted them to discuss evidence, and *to* properly consider its weight and the effect of their conclusions. They were, on this account, not good and lawful men, as the law required them to be, and therefore their verdict was null. There was a mistrial. There is no room for the inference that these jurors might have been under the influence of strong drink on the night before they delivered their verdict on the next morning at ten o'clock, and have been sober at and before that hour. The findings of fact show that other whiskey was passed through a window to the jury on that very morning. The law requires that jurors, while in the discharge of their duties, shall be temperate and in such condition of mind as to enable them to discharge those duties honestly, intelligently and free from the influence and dominion of strong drink. No prudent man would be willing to have the facts of his case passed upon by a jury, some of whom were under the influence of whiskey. Our Reports contain no case in which the facts found on motions for new trials for misconduct of jurors are the same, in words or substance, as in this case, and we do not, by this decision, overrule or modify any opinion heretofore rendered by this Court in matters of this nature. In some of the States of the American Union, drinking in any degree by any of the jurors in the progress of a trial viti-

ates the verdict.    This is not the rule in North Carolina.
In the case of *State* v. *Sparrow*, 7 N. C., 487, the Court
held unanimously, "That it had been settled rightly that
taking refreshments vitiates the verdict only in those cases
where they are furnished by the party for whom the verdict
is found."    In the case of *State* v. *Bailey*, 100 N. C., 528,
the Court found, as a fact, upon motion for a new trial by
defendant "That after the retirement of the jury, one of
their number took a flask from his pocket and, upon his
invitation, four drank of the whiskey it contained.    None
of the jurors were in any degree, under the *influence* of the
liquor, nor was the quantity taken sufficient to produce any
sensible effects," and overruled the motion, in which ruling
this Court declared there was no error.    In the case of
*State* v. *Miller*, 18 N. C., 500, the prisoner offered to prove,
after motion for new trial on other grounds had been made
and denied, that while a juror was absent from the body
of the jury, he visited the store of W. J. L. to get a drink
of spirits, which store stands at the distance of one hundred
and twenty yards from the court-house and in view of it.
The Judge refused to receive this evidence, but this Court,
on appeal, discussed the point, though sustaining the ruling
of His Honor, and held that the matters attempted to be
proved, if true, did not entitle the defendant to a new trial.
Chief Justice RUFFIN, who delivered the opinion in Miller's
case, said however, "But in the present case there is no sug-
gestion that he (the juror) drank to the slightest degree of
intoxication.    He said further, "I do not dispute that if a
juror drink to excess so as to disqualify him for his office,
it is not only a misdemeanor, but it ought to vitiate the ver-
dict.    I will not deny that such a case appearing in the
record could be acted on by a court of errors."

As we have already said, we have no reported case in
which the use of strong drink, to the extent found in this

one, has been made to appear. All the cases reported on this subject are easily to be distinguished from this.

We are of the opinion that His Honor erred in refusing the motion for a new trial, and that there was a mistrial on account of disqualification of the jury because some of them were under the influence of whiskey while they were engaged in making, up their verdict. The defendant is therefore entitled to a new trial.

New Trial.