STATE v. TYSON.

(Filed April 4, 1905.)

*Former Jeopardy—Mistrial—Drunken Juror—Duty of Court.*

1. Where a prisoner was placed on trial for a capital felony under the same bill of indictment at a former term and the trial judge pending the argument discharged the jury and ordered a mistrial on account of the drunken condition of a juror which incapacitated him for further service, a plea of former jeopardy was properly overruled.

2. In all cases the trial judge may, in his discretion, discharge a jury and order a mistrial when necessary to attain the ends of justice, but in capital cases it is his duty to find the facts fully and place them upon record so that upon a plea of former jeopardy his action may be reviewed.

INDICTMENT against Rufus Tyson, alias Morrison, for the murder of Walter Combs, heard by *Judge R. B. Peebles* and a jury, at the November Term, 1904, of the Superior Court of SCOTLAND County.

*Robert D. Gilmer, Attorney-General,* for the State.
No counsel for the prisoner.

BROWN, J.    Only one exception is presented in the record and that arises upon the refusal of the court to sustain the plea of former jeopardy and discharge the prisoner. It appears that the prisoner was placed on trial under the same bill of indictment at the April Term before *Judge Bryan,* who discharged the jury, after four and a half days, on account of the drunken condition of a juror, which incapacitated him from further service. From the findings of the court, we gather that after the evidence was closed and pending argument it was discovered that one of the jurors, one Coving-

ton, had without permission, authority or knowledge of the court or its officers, gone to his home and procured a quantity of liquor and was in a grossly intoxicated condition on Friday night; that he had been drinking secretly all during the trial; that on Saturday morning, the last day of the term, the juror was in a very nervous and besotted condition and unfit for duty, and that unavailing efforts were made to render him fit. Whereupon the court discharged the jury and made a mistrial, after making a full and complete finding of facts as appears of record.

It is well settled and admits of no controversy that in all cases, capital included, the court may discharge a jury and order a mistrial when it is necessary to attain the ends of justice. It is a matter resting in the sound discretion of the trial judge, but in capital cases he is required to find the facts fully and place them upon record, so that upon a plea of former jeopardy, as in this case, the action of the court may be reviewed. It is then the duty of this court to say whether the findings of fact made by *Judge Bryan* and appearing in the record, warranted him in making a mistrial in this case.

We have no hesitation in declaring they fully justify his action and that His Honor, *Judge Peebles,* properly overruled the prisoner's plea of former jeopardy. We adhere to the maxim of the common law, as incorporated in the Federal Constitution, that no person shall be twice put in jeopardy of life or limb for the same offense. It has been adopted and acted upon in this country from the foundation of the government to the present time. *Garrigues' Case,* 2 N. C., 241 (1 Haywood), in 1795; *Jefferson's Case,* 66 N. C., 309; *McGimsey's Case,* 80 N. C., 379, and *Honeycutt's Case,* 74 N. C., 391.

Where a jury has been empaneled and charged in a capital felony and the prisoner's life put in jeopardy, the court has no power to discharge the jury and hold the prisoner for a

second trial, except in cases of absolute necessity. *McGim-sey's case, supra.* Where such absolute necessity appears from the findings of the court and in consequence thereof the jury has been discharged, then in legal contemplation there has been no trial. The fact that the incapacity and illness of the juror is brought about by his own gross misconduct makes no difference so far as the interests of justice are concerned. The result is the same.

If we adopted the contention of the prisoner in this case, it would be within the power of a drunken juror to entirely defeat the ends of justice if he could get liquor enough to continue his intoxication. The court is in no way responsible through its officers, so far as we can see, for the deplorable condition of the juror. There was nothing else His Honor could do except declare the facts and discharge the jury. From these facts the law adjudges there has been no trial. *State v. Scruggs,* 115 N. C., 806; *State v. Washington,* 89 N. C., 535, and 90 N. C., 664; *State v. Jenkins,* 116 N. C., 972.

No Error.