The prisoner was convicted at September Term, 1917, of Rowan, of murder in the first degree of one Abel Harris.
The first exception is to the order of the court withdrawing a juror and making a mistrial, and Exception 8 is to the refusal to grant a motion in arrest of judgment on the ground of the defendant's former jeopardy. On these motions his Honor found the following facts:
"This was an indictment against Baxter Cain, the defendant, charging him with murder in the first degree, No. 25 on the criminal docket of the September Term, 1917, of Rowan. The case was set down for trial and called for trial on Tuesday, 11th day of September, 1917, at which time the State announced its readiness and the prisoner his readiness. A special venire of fifty men had been summoned to appear as jurors under the statute. While the jury was being drawn, a regular juror, to wit, M.A. Goodman, whose name was drawn from the hat, appeared and was asked by the solicitor for the State whether or not he had any conscientious or religious scruples against returning a verdict where the penalty would be the death sentence upon circumstantial evidence, if such evidence warranted, and the juror answered that he had not, thereupon he was passed by the State and accepted by the defendant and was sworn as a juror, being No. 3. Other names were called and a jury of twelve was chosen, sworn, and impaneled, as is usual in capital cases. Immediately after the jury *Page 875 
was finally impaneled, this juror, M. A. Goodman, arose in his seat and stated to the court that he did not understand the question that was asked by the solicitor. He stated that his convictions were such that he would render a verdict of guilty of murder in the first degree in any case upon circumstantial evidence. He was further questioned, and the solicitor stated that he was relying for a verdict in this case upon circumstantial evidence, and again asked the juror if he would convict if the evidence was sufficient in such case, and he stated that he would not. He further stated in response to further questions by the court that his feelings were such that he would not bring in a verdict of murder in the first degree upon circumstantial evidence solely. He further stated to the court that he was sorry not to have made this statement sooner. The court asked him if he had not heard the same question asked of other jurors whose names were drawn from the hat, and he said that he had, and he was then asked why he did not make his feelings and convictions known (827) to the court before the cause had proceeded to this length; he replied that he was diffident about the matter and hesitated to speak out, and now felt that he was himself to blame.
"Upon these findings of fact the solicitor asked that the court direct a mistrial, and the court being of the opinion that such course was necessary and absolutely required to attain the ends of justice in order that the State and the defendant might both have a trial before a jury of competent jurors and not disqualified by their seated convictions and prejudgment, whether those convictions be conscientious or religious, and in order that the ends of justice might be attained, ordered a mistrial, and having withdrawn a juror, to wit, J. L. Holshouser, in so far as the withdrawal of a juror may be necessary, and having discharged the present jury, proceeded to make further provision for the trial of the cause as though no jury had ever been drawn, chosen, or impaneled, and to this, in due time, the defendant at the bar excepted.
"E. B. CLINE, Judge Presiding."
From the verdict and sentence the prisoner appealed.
The exception to the actions of the court in ordering a mistrial and to the refusal of the motion in arrest of judgment on the *Page 876 
plea of former jeopardy present the same question, and this is the chief ground relied upon on the appeal.
When the juror Goodman was asked by the solicitor of the State "whether or not he had any conscientious or religious scruples against returning a verdict where the penalty would be the death sentence upon circumstantial evidence, if such evidence warranted, and the juror answered that he had not, he was passed by the State and being accepted by the prisoner he was sworn as a juror."
The court further finds: "Immediately after the jury finally impaneled, this juror, M. A. Goodman, arose in his seat and stated to the court that he did not understand the question that was asked by the solicitor. He stated his convictions were such that he would not render a verdict of guilty of murder in the first degree in any case upon circumstantial evidence. He was further questioned and the solicitor stated that he was relying for a verdict in this case upon circumstantial evidence, and again asked the juror if he would convict if the evidence was sufficient in such a case, and he said he would (828) not." He was then examined by the court and reiterated this statement, expressing his regret that he had not made this statement sooner, and said he had not done so "because he was diffident about the matter and hesitated to speak out, and now felt that he was himself to blame." Upon the findings of fact, which are above set out in full in the statement of the case, the solicitor asked the court to direct a mistrial, and "the court being of the opinion that such course was necessary and absolutely required to attain the ends of justice in order that the State and the defendant might both have a trial before a jury of competent jurors, and not disqualified by seated convictions and prejudgment, whether those convictions be conscientious or religious, and in order that the ends of justice might be attained," withdrew a juror and ordered a mistrial, and having discharged the jury, proceeded to draw and impanel another jury as though no jury had ever been drawn, or chosen or impaneled.
The object of a trial expressed in the oath of a juror to "Do equal and impartial justice between the State and the prisoner at the bar," it is impossible that the judge could have taken any other action. The object of a trial is to acquit the innocent and to convict the guilty. Neither can be done with any certainty when the juror states frankly under oath that he cannot find a verdict according to the law and the evidence. It was unfortunate that the juror should not have made this statement on his voirdire, but it is to his credit that he made it at least before there was a long trial and a miscarriage of justice by a hung jury, as would doubtless have been the result. *Page 877 
In England there were, till after the year 1800, 204 offenses which were punishable capitally; and until within the last twenty years there was no appeal by the prisoner in England from conviction in any criminal case. Indeed until the last 100 years (in 1836) in felonies defendants were not allowed counsel to speak for them, nor summary process to compel the attendance of witnesses in their behalf. In view of such circumstances went sometimes far to sustain technicalities as to indictments and acquittals on the ground of former jeopardy or on other grounds. It is probable that the judges exercised their discretion in such matters with some regard to the development of the facts in each case.
In this State this was not necessary, and we have long since had statutes forbiding [forbidding] the allowance of technical defenses as to the form of indictments and in other matters. Revisal, 3254, 3255.
As to capital offenses, the law with us has long been also well settled that "In a trial for capital felony the judge for sufficient cause may discharge the jury and hold the prisoner for another trial; in which case it is his duty to find the facts and set them out on the (829) record, and his conclusions upon matters of law arising from the facts may be reviewed by this Court." S. v. Jefferson, 66 N.C. 309, citing S. v. Prince, 63 N.C. 529; S. v. Alman, 64 N.C. 364, and S.v. Baker, 65 N.C. 332.
In S. v. Wiseman, 68 N.C. 203, the Court said: "It must now be considered as settled law in our State that in cases of necessity a mistrial may be ordered even in capital cases. The term necessity, as used in this connection, must be regarded rather as a technical term and includes quite distinct classes of necessity." The Court then explains that the necessity applies not only to cases of a physical nature, as illness or insanity of a juror, but "the necessity of doing justice," arising from the duty of the court to guard the administration of justice from fraudulent practices, as in the case of tampering with the jury or keeping back witnesses on the part of the prosecution by the prisoner. Among other instances of a mistrial in capital cases are S. v. Honeycutt, 74 N.C. 391;S. v. McGimsey, 80 N.C. 377; S. v. Davis, 80 N.C. 385.
In S. v. Bell, 81 N.C. 591, the Court, reiterating what is said above inS. v. Wiseman as to the two classes of necessity, i.e., "physical necessity and the necessity of doing justice," says that the latter arises from the duty of the court to prevent the obstruction of justice by guarding its administration against all fraudulent practices, citing S. v. Wiseman,supra, and S. v. Bailey, 65 N.C. 426.
In S. v. Washington, 89 N.C. 535, this Court approved a mistrial where, after the jury had been impaneled, the solicitor, on the *Page 878 
reassembling of the court, moved for the withdrawal of a juror "for the alleged reason that two jurors whose names were mentioned had fraudulently procured their admission into the panel on a false oath of indifference for the purpose of securing the acquittal of the accused. The court heard testimony upon the matter, found as a fact, and declared the charges against the jurors to be true; and as a conclusion of law that the jury had been impaneled by the fraud of the prisoner, or some one on his behalf, with a view to the prisoner's acquittal, a juror was withdrawn and a mistrial ordered. The prisoner protested, avowing his disbelief of the charge and, if true, any participation in it."
This Court affirmed this action of the court below, citing S. v. Bell,supra, and holding that it was the clear duty of the presiding judge to see that there was a fair and impartial trial and to interpose his authority to prevent unfair dealings, and rejected the contention of counsel for the prisoner that "such power can only be exercised when the prisoner is in privity with the attempt, and that the trial must go (830) on to verdict, however gross a fraud, in the absence of evidence of the prisoner's connection with it," and said that the necessity for the action of the court "in maintaining its dignity and integrity and assuring the firm and impartial administration of justice" is the same whether the prisoner procured the fraudulent action or would merely be its passive beneficiary.
In S. v. Tyson, 138 N.C. 627, a mistrial was held valid because one of the jurors had become intoxicated.
In S. v. Guthrie, 145 N.C. 492, the Court said: "The law is well stated in S. v. Tyson, 138 N.C. 628, `It is well settled, and admits of no controversy, that in all cases, capital included, the court may discharge a jury and order a mistrial when it is necessary to attain the ends of justice. It is a matter resting in the sound discretion of the trial judge; but in capital cases he is required to find the facts fully and place them upon record, so that upon a plea of former jeopardy, as in this case, the action of the court may be reviewed."
In S. v. Dry, 152 N.C. 813, the prisoner absented himself for a short while from the court. The court on learning the fact asked his counsel if he intended to rely upon that fact to invalidate the trial. Counsel replying that he did, the court withdrew a juror and ordered a mistrial. This Court approved his action, calling attention to the fact that "in the Federal courts and in most of the other States a mistrial in a capital felony rests in the sound discretion of the trial judge (as it does in all other criminal cases with us), but that we have not gone further than to approve a mistrial in a capital felony in cases of necessity, physical, or in the interests of justice, the facts in such cases to be *Page 879 
found by the judge, subject to review as a matter of law on appeal," and approving S. v. Guthrie, 145 N.C. 495, where it was held that in a capital felony the judge may "order a mistrial when it is necessary to attain the ends of justice."
In a more recent case, S. v. Upton, 170 N.C. 770, the Court again held that in a trial for capital felony the court can order a mistrial "when necessary to attain the ends of justice," citing S. v. Guthrie, S. v.Tyson, and S. v. Dry, supra.
To the same purport are the rulings elsewhere in this country In U.S. v.Perez, 9 Wheaton, 579, it was held that the courts are invested with the discretionary authority of discharging a jury from giving any verdict in a capital case whenever in their opinion there is a manifest necessity for such an act or the ends of public justice would otherwise be defeated.
In S. v. Allen, 46 Conn. 531, the prisoner's counsel in the course of a trial for murder and after the witness for the State had been examined stated to the court that he had been informed and believed that one of the jurors was disqualified because before the (831) trial he had expressed an opinion that the prisoner was guilty, and asked the court to suspend the trial and hear evidence on the point, which the court did, and found the fact to be as claimed, but the prisoner's counsel then offered to waive the disqualification and proceed with the trial with the panel or to go on with the 11 jurors, which the court refused to do, and discharged the jury. It was held that this was not a bar to another trial.
The law is well summed up in the following quotation from 8 R.C.L., p. 153, "Under the strict practice which anciently prevailed, in England at least, the discharge of the jury in a criminal case for any cause after the proceedings had advanced to such a stage that jeopardy had attached, but before a verdict of acquittal or conviction, was held to sustain a plea of former jeopardy, and therefore to operate practically as a discharge of the prisoner. In deference, however, to the necessities of justice, this strict rule has been greatly relaxed and the general modern rule is that the court may discharge a jury without working an acquittal of the defendant in any case where the ends of justice, under the circumstances, would otherwise be defeated."
Prisoner's counsel in their brief contend that the juror Goodman's statement that he would not bring in a verdict of murder in the first degree upon circumstantial evidence only should not have been taken, but that the court should have waited until the evidence was produced so that the court might decide whether it was in fact circumstantial. Such course would have been a useless consumption of the public time, *Page 880 
and needlessly expensive, for the solicitor for the State publicly announced that he was relying upon circumstantial evidence for conviction, and the court besides can see from the record that this was the case.
In the appellant's brief he states: "If this honorable Court should be of the opinion that the plea of former jeopardy could not avail the appellant, it certainly was at least error on the part of his Honor to discharge the juror and order a mistrial, which entitled the appellant to a new trial, and we, of course, say this with the understanding that if the court should so hold we will be precluded from again entering a plea of jeopardy upon a new trial."
If, however, the prisoner is correct in his contention of former jeopardy, this Court would be powerless to order a new trial, but would have to discharge the prisoner. There is no exception as to the manner of obtaining the second jury and nothing on the record suggests any irregularity. The prisoner has already had a new trial before an impartial jury and is not now entitled to another.
(832) Exception 2 is to the admission of testimony describing the condition of a dollar bill which the witness identified as having deposited in the safe which was robbed at the time of the murder of the custodian of the property, the bill having been torn in two and pasted together with brown paper. This was competent for the purpose of identifying a similar bill which was found in the possession of the prisoner immediately following the homicide and robbery.
Exception 3 is to the same witnesses' testimony that he had prior to the trial seen this bill and had stated that "it looked pretty much like the same bill." This was merely corroboration of his own testimony and was competent and harmless.
Exception 4 is to evidence that the prisoner on prior occasions had recently attempted to borrow sums of money. This was competent as a motive for the crime to show that he was in need of money, and that he availed himself of the opportunity to rob the safe and secure the funds which the prisoner knew were placed each night in the safe (which was robbed) by the conductors of the street railway. The deceased was the night watchman in charge of the property.
Exception 5 is to the testimony of the witness that about 2 o'clock on the night of the homicide he had seen a man riding a mouse-colored mule, attempting to cross the railroad track near the cotton mill. He said it was dark and he was not able to identify the prisoner as the man, but the mule was about the size of the prisoner's mule. This was offered simply as a circumstance, together with the other evidence, to identify the prisoner with the crime. Whether it had any weight or *Page 881 
not was for the jury. In view of the other testimony, it was not so remote that it should have been excluded, nor was it a matter of sufficient materiality to be prejudicial error justifying a new trial.
Exceptions 6 and 7 are to the refusal to grant a motion of judgment as of nonsuit. There was ample evidence not only to submit the case to the jury, but to justify this conviction, if it satisfied the jury beyond a reasonable doubt, of the prisoner's guilt.
The prisoner has been defended with marked ability by his learned counsel, and everything has been presented to the judge and jury below and to this Court that in any way could militate in the prisoner's favor. We find no error in the conduct of the trial by the able and impartial judge who presided.
If the statutory time as to the several steps in settling cases on appeal had been observed as they should have been, this case would have stood for argument at the end of the docket at last term.
No error.
Cited: S. v. Beal, 199 N.C. 295; S. v. Ellis, 200 N.C. 80; S. v. Cain,223 N.C. 700; S. v. Ham, 224 N.C. 130; S. v. Crocker, 239 N.C. 450.