## STATE v. DORIS CROCKER.

(Filed 24 February, 1954.)

**1. Constitutional Law § 36—**

No person can be twice put in jeopardy of life or limb for the same offense. Constitution of North Carolina, Article I, Sec. 17; Fifth Amendment to the Federal Constitution.

**2. Criminal Law § 20—**

Jeopardy attaches when a defendant in a criminal prosecution is placed on trial (1) on a valid indictment or information, (2) before a court of competent jurisdiction, (3) after arraignment, (4) after plea, and (5) when a competent jury has been impaneled and sworn to make true deliverance in the case.

**3. Criminal Law § 22—**

Order of mistrial entered upon motion of defendant or with defendant's consent will not support a plea of former jeopardy.

**4. Same—**

An order of mistrial properly entered in a capital case for physical necessity or for necessity of doing justice will not support a plea of former jeopardy.

**5. Criminal Law § 58—**

The trial court may order a mistrial for physical necessity in a capital case, as when a juror or a defendant, by reason of illness or insanity or other physical reason, is wholly disabled, or for the necessity of doing justice, as when necessary to guard the administration of justice against fraudulent practices. The court must find the facts upon which his conclusion is based and set them out in the record so that his action may be reviewed.

**6. Same—**

The power of the trial court to order a mistrial in a capital case under the necessity of doing justice is not an unlimited discretionary power but must be based upon the occurrence of some incident of such a nature that would render impossible a fair and impartial trial under the law.

**7. Criminal Law §§ 22, 58—Findings of intoxication of jurors during night held insufficient to justify order of mistrial.**

The trial court found that during the progress of this trial for a capital felony several of the jurors became intoxicated in their hotel at night, during recess of the court, one of them being so unruly as to require thirty minutes to quiet him. Upon these findings, the court ordered a mistrial. There was no evidence or finding that any juror could not continue his service when court convened the next morning or within a reasonable time thereafter, or of any tampering or fraudulent practice with regard to the jury. *Held*, the findings are insufficient to support the court's order for a mistrial, and defendant's plea of former jeopardy upon the subsequent trial should have been sustained.

**8. Criminal Law § 58—**

The court may not order a mistrial through information obtained by an *ex parte* investigation.

APPEAL by defendant from *Burgwyn, Emergency Judge,* September Term, 1953, of WILSON.

At the September Term, 1953, before Burgwyn, Emergency Judge, and a jury, the defendant, Doris Crocker, was tried for the capital felony of murder in the first degree. She was convicted of manslaughter and sentenced to a prison term of not less than four nor more than eight years. No error is assigned to the conduct of this trial apart from rulings relating to what had occurred at May Term, 1953.

At the October Term, 1952, the grand jury returned a true bill of indictment charging the defendant with the first degree murder of her husband, John Latham Crocker, on 26 August, 1952. There were no further proceedings until the May Term, 1953, at which time the defendant was arraigned before Joseph W. Parker, J., upon the bill of indictment for the capital felony of murder in the first degree, entered her plea, "Not Guilty, and especially by reason of Transitory Insanity," and thereupon a jury of twelve, together with a thirteenth or alternate juror, were duly selected, sworn and impaneled. These events occurred on Tuesday, 12 May, 1953, on which day the trial commenced. During Tuesday, 12 May, 1953, Wednesday, 13 May, 1953, and Thursday, 14 May, 1953, the State and the defendant offered the testimony of a number of witnesses, the defendant testifying as a witness in her own behalf. The court recessed at the close of each day on Tuesday, Wednesday and Thursday afternoons. The jury, during each recess, were held together by an officer and occupied rooms in a hotel.

On convening the court on Friday morning, 15 May, 1953, the court, in the absence of the jury, made the following statement: "It has come to my attention that during the night there has been gross misconduct of the jury. I have made an investigation of it and there is no alternative other than to withdraw a juror and declare a mistrial."

Thereupon, in the absence of the jury, the court called to the stand A. W. Miller and J. C. Eversole, police officers of the Town of Wilson, and Sheriff J. W. Thompson. At the conclusion of the court's examination of these three witnesses, the following order was entered:

"IT APPEARING TO THE COURT that the defendant in the above entitled case is now on trial for the capital felony of Murder, that a jury has been previously summoned, selected, sworn and impaneled, and that this criminal action has been in process of trial since Tuesday, May 12, 1953; that during this period the said jury has been in charge of a duly sworn officer and has been quartered in the Briggs Hotel in the Town of Wilson; and

it further appearing that in the early hours of the morning of May 15, 1953, at or about the hour of 2:00 A.M., complaint having been made to the Police Department of the Town of Wilson as to disorderly conduct on the part of at least three jurors, Officer Miller and Officer Eversole of the City Police Department were called to the hotel. That at that time these officers observed three jurors in an intoxicating (*sic*) condition and moving about in their underwear along the halls of said hotel; that these officers were unable to quiet one of these jurors and requested the intervention of J. W. Thompson, Sheriff of Wilson County; that upon the arrival of Sheriff Thompson at the hotel he observed one of the jurors in an intoxicated condition, either from the use of alcoholic beverages or narcotic drugs. That it was necessary for the Sheriff to threaten arrest of this juror before he would consent to become quieted and re-enter his room at this hotel. That upon the sworn testimony of these officers, to wit, Mr. A. W. Miller and Mr. J. C. Eversole of the Police Department of the City of Wilson, and upon the sworn testimony of J. W. Thompson, Sheriff of Wilson County, the foregoing is hereby found as facts.

"The Court further finds as a fact that the proper administration of justice and the securing of a fair, just and impartial trial on behalf of the defendant and on behalf of the State of North Carolina, and the ends of justice, requires that a juror be withdrawn and a mistrial ordered.

"WHEREUPON, IT IS ORDERED, CONSIDERED AND ADJUDGED, in the exercise of sound discretion, that Rufus Hayes be, and he is hereby withdrawn as a Juror in this Criminal Action, AND IT IS FURTHER ORDERED that a mistrial be, and it is hereby ordered.

"Done in Wilson, North Carolina, this 15 day of May, 1953.

"JOSEPH W. PARKER,
*Judge Presiding.*"

To the quoted order of mistrial the defendant objected and duly excepted.

At the September Term, 1953, before Burgwyn, Emergency Judge, the case was again called for trial, the Solicitor announcing that the State would ask for a verdict of guilty of murder in the first degree. Upon the call of the case the defendant moved that the bill of indictment be dismissed and the defendant discharged, interposing her plea of Former Jeopardy predicated upon the uncompleted former proceedings and trial at May Term, 1953. The court denied the motion, overruling the plea of former jeopardy on the ground that the order of mistrial entered by Joseph W. Parker, J., had been properly entered. To this order, the defendant objected and duly excepted. Thereupon, the trial proceeded, resulting in the verdict of guilty of manslaughter. Exceptions were taken by the defendant to the trial, verdict and judgment, by way of preserving

her rights under her prior exceptions to the order of mistrial and to the overruling of her plea of former jeopardy.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*
*J. Faison Thomson & Son, N. W. Outlaw, Sharpe & Braswell, and Robert Cowen for defendant, appellant.*

BOBBITT, J.  Decision here depends upon whether the facts found by Parker, J., disclose necessity sufficient to justify the order of mistrial over the objection of the defendant.  In sharper focus, the question is whether the facts found relating to the time, nature and duration of the misbehavior or disability of certain of the jurors are such as to warrant the order of mistrial over the objection of the defendant.  If so, the defendant's plea of former jeopardy was properly overruled and the judgment must be affirmed.  If not, the defendant's plea of former jeopardy must be sustained and the defendant discharged.

It is a fundamental and sacred principle of the common law, deeply imbedded in our criminal jurisprudence, that no person can be twice put in jeopardy of life or limb for the same offense.  *S. v. Prince,* 63 N.C. 529; *S. v. Hicks,* 233 N.C. 511, 64 S.E. 2d 871.  It was incorporated in the Bill of Rights of the Federal Constitution.  (United States Constitution, Amendment V.)  While the principle is not stated in express terms in the North Carolina Constitution, it has been regarded as an integral part of the "law of the land" within the meaning of Art. I, sec. 17.  *S. v. Mansfield,* 207 N.C. 233, 176 S.E. 761.

As stated by *Stacy, C. J.:* "Jeopardy attaches when a defendant in a criminal prosecution is placed on trial: (1) On a valid indictment or information, (2) before a court of competent jurisdiction, (3) after arraignment, (4) after plea, and (5) when a competent jury has been impaneled and sworn to make true deliverance in the case." *S. v. Bell,* 205 N.C. 225, 171 S.E. 50.

Here the defendant was put in jeopardy for the capital felony of murder in the first degree at the May Term, 1953.  The second trial (September Term, 1953) was a trial for murder in the first degree upon the identical bill of indictment.

It is well established that the plea of former jeopardy cannot prevail on account of an order of mistrial when such order is entered upon motion or with the consent of the defendant.  *S. v. Davis,* 80 N.C. 384; *S. v. Dry,* 152 N.C. 813, 67 S.E. 1000.  However, this rule has no application here.

In the earlier cases the rule as stated by *Ruffin, C. J.,* in *S. v. Ephraim,* 19 N.C. 162, was that, *in the absence of the defendant's consent,* the trial judge had no authority to discharge the jury and hold the defendant to

await a second trial "but for evident, urgent, overruling necessity, arising from some matter occurring during the trial, which was beyond human foresight and control; and generally speaking, such necessity must be set forth in the record." (Emphasis supplied.) See *S. v. Garrigues,* 2 N.C. 241; *In re Spier,* 12 N.C. 491.

As pointed out by *Stacy, C. J.,* in *S. v. Beal,* 199 N.C. 278, 294, 295, 154 S.E. 604, the rule has been greatly relaxed; and it has been recognized that the necessity justifying an order of mistrial may be one of two kinds, "physical necessity and the necessity of doing justice."

The two kinds of necessity, *i.e.,* "physical necessity" and the "necessity of doing justice" were so classified by *Boyden, J.,* in *S. v. Wiseman,* 68 N.C. 203. As to "physical necessity," he said: "One class may not improperly be termed physical and absolute; as where a juror by a sudden attack of illness is wholly disqualified from proceeding with the trial; or where the prisoner becomes insane during the trial, or where a female defendant is taken in labor during the trial." As to "necessity of doing justice," he said that this arises from the duty of the court to "guard the administration of justice from fraudulent practices; as in the case of tampering with the jury, or keeping back the witnesses on the part of the prosecution."

It will be observed that "the necessity of doing justice" is not an expression connoting a vague generality but one that relates to a limited subject, namely, the occurrence of some incident of a nature that would render impossible a fair and impartial trial under the law. In *S. v. Wiseman, supra,* the basis for mistrial was "tampering with the jury." In *S. v. Bell,* 81 N.C. 591, and in *S. v. Washington,* 89 N.C. 535, 45 Am. Rep. 700, a juror had fraudulently procured himself to be put on the jury for the purpose of acquitting the defendant in a trial for murder. In *S. v. Cain,* 175 N.C. 825, 95 S.E. 930, a juror had given a false answer to the solicitor bearing upon his fitness and qualifications to serve as a juror. In *S. v. Upton,* 170 N.C. 769, 87 S.E. 328, it was discovered that a juror was disqualified because of nonresidence. As stated by *Ashe, J.,* in *S. v. Bell,* 81 N.C. 591, it is the duty of the trial judge "to see that there is a fair and impartial trial, and to interpose his authority to prevent all unfair dealing and corrupt or fraudulent practices on the part of either the prosecution or the defense."

Cases where the order of mistrial is predicated upon physical necessity, *i.e.,* the inability of a juror to continue to serve, include *S. v. Beal, supra,* where a juror became insane; *S. v. Tyson,* 138 N.C. 627, 50 S.E. 456, where a juror was intoxicated to such extent that he could not continue to serve; *S. v. Scruggs,* 115 N.C. 805, 20 S.E. 720, where a juror became too ill to continue to serve.

The rule recognized and restated in many cases is succinctly expressed by *Pearson, C. J.*, in *S. v. Jefferson,* 66 N.C. 309, as follows: "It is settled that in a trial for a capital felony for sufficient cause the Judge may discharge the jury and hold the prisoner for another trial; in which case it is his duty to find the facts and set them out in the record, *so that his conclusion as to the matter of law arising from the facts may be reviewed by this Court.*" (Emphasis supplied.) While it is stated repeatedly that the order of mistrial, even in capital cases, is a matter resting in the sound discretion of the trial judge, it is equally well settled that the findings of fact must be sufficient to warrant the exercise of this discretionary authority. *S. v. Tyson, supra.*

Now we come to the critical task. Do the facts found by Parker, J., at May Term, 1953, constitute a sufficient basis for the order of mistrial either on the ground of "the necessity of doing justice" or on the ground of "physical necessity"? We are constrained to hold that they do not.

It is not suggested in the findings of fact that the jurors or any of them were disqualified on grounds of incompetence or of fraudulent practice, or that any improper influence had been brought to bear upon them relating to the case. The incident involving certain of the jurors, upon which the order of mistrial was predicated, was an isolated incident during a long trial. It occurred in the hotel during the night while the court was in recess. Three of the jurors were intoxicated to some extent. One was in worse condition than the others. It took some thirty minutes before the unruly juror could be quieted. There is no suggestion that any juror at any time when the court was in session was under any disability on account of intoxicants or otherwise. Nor is there evidence that any of these jurors, when court convened Friday morning, were not "clothed and in their right minds" and able to proceed with their jury service. The record here shows that the testimony before the trial judge was heard in the absence of the jury. There is no indication that any of the jurors were questioned in open court or examined by a physician or other person relative to their fitness and competence to serve as jurors when court convened on Friday morning. It appears that the order of mistrial was provoked by and based on the unfortunate incident in the nighttime, causing some disturbance, when certain of the jurors drank some intoxicants in their hotel rooms. While not material to decision here, and not embraced in the findings of fact upon which the order of mistrial was based, the record indicates that the bailiff in charge of the jurors furnished the jurors the intoxicants they drank and received a sentence for contempt of court for his conduct.

In *S. v. Scruggs, supra,* during the progress of the trial one of the jurors interrupted the proceedings stating that he was sick and unable to continue to serve as a juror. "He was examined at length by the court

touching his physical condition. He declared that he had been attacked by sickness; that he could not sit on the case as a juror by reason of his illness, and it was necessary that he be excused. The court therefore found as a fact that the juror was unable by reason of his sickness to continue to serve as a juror in the case."

In *S. v. Tyson, supra,* it is stated by *Brown, J.:* "It appears that the prisoner was placed on trial under the same bill of indictment at the April term before Judge Bryan, who discharged the jury, after four and a half days, on account of the drunken condition of a juror, *which incapacitated him from further service.* From the findings of the court, we gather that after the evidence was closed and pending argument it was discovered that one of the jurors, one Covington, had without permission, authority, or knowledge of the court or its officers, gone to his home and procured a quantity of liquor and was in a grossly intoxicated condition on Friday night; *that he had been drinking secretly all during the trial;* that on Saturday morning, the last day of the term, *the juror was in a very nervous and besotted condition and unfit for duty,* and *that unavailing efforts were made to render him fit.* Whereupon the court discharged the jury and made a mistrial, after making a full and complete finding of facts, as appears of record." (Emphasis supplied.)

It is true that the rule as to former jeopardy has been greatly relaxed by decisions in cases where the facts seemed to compel a departure from the application of the rule in its original strictness. However, the fundamental rule remains and each departure from or exception to its application must be clearly and substantially marked out and grounded. *S. v. Prince, supra; S. v. Alman,* 64 N.C. 364.

Where a juror, while hearing the evidence or while hearing the argument of counsel or the charge or while deliberating as to verdict, is so incapacitated by reason of intoxicants or otherwise as to be incapable, physically or mentally, of functioning as a competent, qualified juror, the trial judge may order a mistrial. See *S. v. Jenkins,* 116 N.C. 972, 20 S.E. 1021; *S. v. Tyson, supra; S. v. Scruggs, supra.*

Where, as here, no evidence is heard and no findings of fact are made as to the crucial question, *i.e.,* the condition and fitness of the juror(s) to continue their service when court convened on Friday morning, or within a reasonable time thereafter, there is no sufficient factual basis for the trial judge in the exercise of his discretion to order a mistrial.

The power of the trial judge to order a mistrial in a capital case, over the objection of the defendant, is one which should be exercised with caution and only after a careful consideration of all available evidence and only after making the requisite findings of fact on the basis of evidence before the court at the time judicial inquiry is made. 63 Am. Jur. 685, Section 977.

Of course, information obtained by the judge through an *ex parte* investigation could not constitute a basis for the requisite findings of fact. *In re Custody of Gupton,* 238 N.C. 303. However, decision here is predicated solely upon the insufficiency of the facts as found to support the order of mistrial.

We are not unmindful of the tension and difficulty to which the presiding judge, the jurors, the defendant, counsel, and all others connected with the trial of a capital case, are subjected; and we can well understand the judge's consternation upon learning of the disturbance caused by the impropriety and regrettable behavior of certain of the jurors. We are aware, too, of the position of Judge Burgwyn at September Term, 1953, when called upon to rule on the sufficiency of the order of mistrial previously entered by another Superior Court judge.

It is not to be understood that we are modifying former decisions relating to the plea of former jeopardy in capital cases. Our holding here is that the facts and circumstances set forth in the findings of fact are not of such compelling nature as to justify a further relaxation of a rule of such importance in safeguarding the life and liberty of a citizen against repeated prosecutions for the same offense.

The preservation of the salutary principle underlying the plea of former jeopardy in capital cases is of far greater importance than the service by this defendant of the prison term imposed by the judgment at September Term, 1953, upon her conviction for manslaughter. The uncertainty, anxiety and expense of two trials for the capital felony of murder in the first degree, within themselves, constitute an ordeal that is the equivalent of substantial punishment.

In view of our holding that the order of mistrial by Parker, J., at May Term, 1953, was not justified by the findings of fact made, it follows that the defendant's plea of former jeopardy must be sustained.

Accordingly, the judgment entered at September Term, 1953, should be vacated and the defendant discharged from custody. It is so ordered.

Reversed.