STATE v. WYLIE EUGENE BROWN.

(Filed 12 January, 1968.)

**Criminal Law § 169—**

    The admission of testimony over objection is ordinarily harmless when testimony of the same import is theretofore or thereafter introduced without objection, or defendant elicits similar testimony on cross-examination.

APPEAL by defendant from *Bundy, J.,* August 7, 1967 Schedule "A" Criminal Session of MECKLENBURG.

The grand jury returned a true bill charging that defendant, "on the 5th day of July, A.D., 1967, about the hour of 4:30 A.M. in the night of the same day, with force and arms, at and in the county aforesaid, the dwelling house of one Loomis Oglesby, Jr., there situate, and then and there actually occupied by one Loomis Oglesby, Jr., and Mrs. Ida Mae Oglesby, Jr. feloniously and burglariously did break and enter, with intent, the goods and chattels of the said

Loomis Oglesby, Jr. in the said dwelling house then and there being, then and there feloniously and burglariously to steal, take and carry away $14.00 in lawful money of the United States, . . ."

Defendant was tried on said bill of indictment for a less degree of the same crime, namely, breaking and entering the dwelling house of Loomis Oglesby, Jr., with intent to commit the felony of larceny therein.

The State's evidence consisted of the testimony of Ida Mae Sanders, referred to hereafter as Miss Sanders, and of Loomis Oglesby, and of T. R. Smith, a police officer. Miss Sanders, referred to in her testimony and in the testimony of Oglesby, as Oglesby's "housekeeper," resided in Oglesby's rented dwelling at 426 East Hill Street in Charlotte, North Carolina.

According to Miss Sanders: On July 5, 1967, about 4:30 a.m., a man took out the screen, opened the window and through the window entered her private bedroom from the front porch; that he "woke (her) up trying to get on top of (her)"; that she hollered, beat on the wall and called Oglesby; that the man fled, going out through the window and taking with him "$13.00 tied up in a handkerchief lying on the headboard of (her) bed"; and that in his flight he left "his shirt, which he had taken off, in (her) room."

According to Oglesby: In response to Miss Sanders' call for help, he rushed from his private bedroom to the porch; that he saw the "boy" jump out of the window, and also saw him when he jumped "off the porch"; and that, when he would not stop in response to his command, "(he) took a shot at him," and thought he had hit him but had not done so.

Miss Sanders testified she was unable to identify the man who had entered and who fled from her private bedroom. Oglesby testified defendant was the man he saw jump out of the window and off the porch.

The testimony of Smith consists largely of what Oglesby had told him on July 6th and later on July 10th, the latter being the date on which Oglesby swore out the warrant for defendant. According to Smith, Oglesby referred to the bedroom occupied by Miss Sanders as "his wife's bedroom." Miss Sanders is referred to in the bill of indictment by the name of Mrs. Ida Mae Oglesby, Jr. Miss Sanders testified: "I hold myself out to the public as Miss Sanders."

Miss Sanders, on cross-examination, testified: "I don't know nothing about no warrant; Mr. Oglesby had took out the warrant; I didn't."

When Oglesby was first examined (he was later recalled), no reference was made during direct examination by the solicitor to any conversation Oglesby had with Mrs. Lula Mae Brown, mother of

defendant. However, during *the cross-examination* of Oglesby, testimony was elicited to the effect that Oglesby had conversed with Mrs. Brown; that he had exhibited to her the shirt left by the intruder in the bedroom of Miss Sanders; and that Mrs. Brown had identified this shirt as a shirt worn by defendant. Later, other testimony of Oglesby of like import was admitted without objection.

Evidence offered by defendant included his personal testimony and the testimony of his mother. Specifically, Mrs. Brown denied having identified the shirt exhibited to her by Oglesby as a shirt belonging to or worn by defendant. Defendant testified and offered evidence to the effect it was not his shirt and had not been worn by him. Defendant denied any connection with the alleged crime and testified and offered evidence to the effect he was elsewhere when the alleged crime was committed.

The jury found defendant "Guilty of the charge of Breaking and Entering with the intent to commit a felony therein." The court pronounced judgment imposing a prison sentence of seven years.

On account of the indigency of defendant, an order was entered providing that Mecklenburg County pay the costs of mimeographing the record and of defendant's brief incident to his appeal.

*Attorney General Bruton, Deputy Attorney General Lewis and Staff Attorney Jacobs for the State.*
*William L. Pender for defendant appellant.*

PER CURIAM. The court permitted Officer Smith to testify over defendant's objection that the shirt Oglesby had exhibited to him on July 10, 1967, and which had been offered in evidence as State's Exhibit No. 1, was the same shirt Oglesby told him "on the morning of the 10th that the mother of the defendant told him belonged to the defendant." Defendant assigns as error the overruling of his objection and the admission of this testimony.

Defendant contends this testimony of Smith was elicited in response to a *leading* question. In respect of this contention, we find neither error nor prejudice.

The testimony of Smith that Oglesby had told him *that Mrs. Brown had told Oglesby* that the shirt in evidence was a shirt owned or worn by defendant was incompetent. However, as set forth in our preliminary statement, evidence to this effect was first elicited during the cross-examination of Oglesby and was received in evidence then and thereafter without objection. Moreover, Smith had testified, without objection, prior to the question to which objection was made, that Oglesby told him that Mrs. Brown had identified the shirt as

"Wylie's shirt." Hence, the error in Smith's quoted testimony must be deemed harmless.

"The admission of testimony over objection is ordinarily harmless when testimony of the same import is theretofore or thereafter introduced without objection, or defendant elicits similar testimony on cross-examination, . . ." 3 Strong, N. C. Index 2d, Criminal Law § 169.

The critical issue of identity was for jury determination. An appraisal of the cold record suggests that such determination was fraught with difficulty. However, further factual investigation as to defendant's guilt is a matter within the sphere and competence of the Board of Paroles.

Each of defendant's remaining assignments of error has been considered. None discloses error of law deemed of such prejudicial nature as to justify a new trial or of such substance as to merit particular discussion.

No error.