STATE OF NORTH CAROLINA v. CURTIS DONNIE SHULER

No. 107

(Filed 13 June 1977)

1. **Homicide § 21.5— first degree murder—shooting—sufficiency of evidence**

Evidence in a first degree murder prosecution was sufficient to be submitted to the jury where it tended to show that deceased's body was found on the shoulder of a road with a fatal wound in the chest and three other bullet wounds in the head; his pocketbook and automobile were missing; several persons saw defendant in possession of deceased's automobile shortly after the crime was committed; on the morning following decedent's death, defendant told an acquaintance that on the night before he had shot a man while attempting to rob him and had taken his money and automobile; deceased's death was caused by bullets from a .25 caliber pistol; and there was evidence that defendant had a .25 caliber pistol in his possession on the morning after the deceased met his death.

2. **Criminal Law § 34.4— defendant's guilt of prior offense—admissibility**

The trial court in a first degree murder prosecution did not err in allowing into evidence testimony by a witness that less than one month prior to the fatal shooting in question defendant had a gun that "was little and it was black and it was at my head," since evidence of that prior criminal act was admissible (1) to prove a material fact at issue, that defendant possessed a pistol and, (2) to contradict defendant's testimony that he had never had a .25 caliber pistol in his possession.

3. **Constitutional Law § 34— double jeopardy—time of attachment—exception to rule**

Jeopardy attaches when a defendant in a criminal prosecution is placed on trial: (1) on a valid indictment or information, (2) before a court of competent jurisdiction, (3) after arraignment, (4) after plea, and (5) when a competent jury has been empaneled and sworn; nevertheless, a subsequent trial of a defendant, following the termination of earlier proceedings upon an order of mistrial, is not precluded by a plea of former jeopardy where the mistrial was granted, over defendant's objections, due to "a physical necessity or the necessity of doing justice."

4. **Constitutional Law § 34; Criminal Law § 26.8— mistrial required by necessity of doing justice—subsequent former jeopardy plea properly denied**

Where a deputy sheriff commented to a juror during defendant's first trial that "unless there is more evidence produced than there has been, that man will never be found guilty by this jury," the court on appeal cannot say that the trial judge's declaration of a mistrial, *sua sponte*, was not required by the "necessity of doing justice"; therefore, defendant's subsequent plea of former jeopardy was properly denied.

APPEAL by defendant from *Clark, J.*, 7 September 1976 Session of CUMBERLAND Superior Court.

Defendant was charged in an indictment, proper in form, with the first-degree murder of Ivey Jerome Lilly. Defendant entered a plea of not guilty.

The State's evidence tended to show that on 3 December 1975 the body of Ivey Jerome Lilly was found on the shoulder of a rural paved road in the eastern edge of Cumberland County. Medical testimony established that his death was caused by multiple gunshot wounds. Four bullets were taken from the body of the deceased and were identified by a firearms expert as being .25 caliber automatic fire jacketed bullets. It was the opinion of the expert that all four of the bullets were fired from the same weapon.

It was further established by the State's evidence that the deceased owned a 1971 maroon, black-topped Chevrolet Impala. On 5 December 1975, after pursuit by police officers in which he initially failed to heed siren and flashing light signals, defendant was finally apprehended by police officers and it was ascertained that he was operating the automobile formerly owned by the deceased. Upon questioning by the police officers, defendant stated that the automobile belonged to him, but upon being advised that the Chevrolet was listed as a stolen vehicle he said that he rented it from a friend by the name of Allen James. The officers were unable to locate a person by the name of Allen James. Defendant thereafter gave a written statement to the effect that he had obtained the automobile from a man named Poe Currie by paying him a small sum of money. He last saw Currie going toward a bus station in Raleigh for the stated purpose of taking a bus out of North Carolina.

Certain tire marks were found on the shoulder of the road about 100 feet from the body of the deceased and on the opposite side of the road. There was expert testimony that two of the tires on the deceased's automobile could have made part of those impressions.

Scharoyle Louise Williams testified that she saw defendant between the hours of 12:00 midnight and 1:00 a.m. on the morning of 3 December 1975. She was sitting in an automobile with Harold Pridgen and Margie Walters waiting for a man to sell her some heroin. Defendant drove up in a Chevrolet automobile

which she described as having a black top and a rust-colored bottom. Defendant asked if any of them wanted to buy a gun. She observed that he had a .25 caliber automatic pistol. She later identified the Chevrolet belonging to deceased as the one defendant was driving on that morning.

Thomas Bernard Richardson testified that on the morning of 3 December 1975 defendant called him and stated that he was coming by his apartment to get some clothes. Shortly thereafter defendant drove up in a maroon, black-topped Chevrolet. Defendant came into the apartment and told the witness that on the prior night he had run across a "dude" and had "burnt" or tricked him out of some money; that during a later attempt to rob him this man gave him a lot of trouble and he had to shoot him. Defendant stated that he took the man's money and his automobile. At the time of this conversation, defendant had a .25 caliber pistol in his possession.

The State offered other evidence tending to show that defendant was in possession of a black-topped Chevrolet and a .25 caliber pistol on or about 3 December 1975.

Defendant testified and denied any knowledge of the killing of Ivey Jerome Lilly. He stated that he had received the automobile from a man named Poe Currie after giving him $20.00 for the use of the car. He said that he made conflicting statements to police officers concerning his possession of the automobile because he did not want them to know that he was in possession of a stolen vehicle.

On rebuttal Willie Currie testified that he had never had a Chevrolet automobile in his possession and that he had never loaned or rented any kind of vehicle to defendant.

Other evidence pertinent to the decision of this appeal will be hereinafter stated in the opinion.

The jury returned a verdict of guilty of murder in the first degree. Judge Clark entered judgment on 10 September 1976 imposing a sentence of life imprisonment.

*Attorney General Edmisten, by Assistant Attorney General George J. Oliver, for the State.*

*Harold D. Downing for the defendant.*

BRANCH, Justice.

[1] Defendant assigns as error the denial of his motion for judgment as of nonsuit.

Pertinent portions of our often stated rule concerning a trial judge's consideration of a motion for judgment as of nonsuit are as follows: The question presented by a motion for judgment as of nonsuit is whether upon consideration of admitted evidence, both competent and incompetent, in the light most favorable to the State, there is substantial evidence to support a jury finding that the offense charged in the bill of indictment has been committed and that the defendant is the person who committed it. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679; *State v. Rowland,* 263 N.C. 353, 139 S.E. 2d 661. The credibility of the witnesses is for the jury even when their character is questionable. 2 N. C. Index 2d, Criminal Law § 106.

Here the deceased's body was found on the shoulder of a road with a fatal wound in the chest and three other bullet wounds in the head. His pocketbook and automobile were missing. Several persons saw defendant in possession of deceased's automobile shortly after the crime was committed. On the morning following decedent's death, defendant told an acquaintance that on the night before he had shot a man while attempting to rob him and had taken his money and automobile. Deceased's death was caused by bullets from a .25 caliber pistol and there was evidence that defendant had a .25 caliber pistol in his possession on the morning after the deceased met his death.

We hold that the State offered ample evidence to support reasonable inferences that the deceased met his death as the result of a homicide committed during an armed robbery and that defendant was the person who committed the crime.

This assignment of error is overruled.

[2] Defendant next contends that the trial court erred by permitting the witness Terry Blackwelder to testify, over objection, as to defendant's prior criminal acts.

Defendant testified that he had never had a .25 caliber pistol in his possession. He further stated that he knew "a white female by the name of Terry," but denied that he had ever had a .45 automatic pistol in her presence. The State, in rebuttal,

offered Terry Blackwelder who testified that during the month of November 1975 defendant possessed a gun. She stated:

> . . . I don't know what kind of gun, all I know it was little and it was black and it was at my head. . . .

The general rule is that in a prosecution for a particular crime the State cannot offer evidence tending to show that the defendant has committed another distinct, independent or separate offense. *State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535.

The landmark case of *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364, contains this language:

> ". . . The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime. . . ."

The testimony of the witness Blackwelder tended to prove that less than a month before Lilly met his death by wounds inflicted by a .25 caliber pistol, defendant had a similar weapon in his possession. The challenged evidence was therefore admissible as substantive evidence to prove a material fact at issue. We recently considered a similar question in *State v. Stanfield*, 292 N.C. 357, 233 S.E. 2d 574. There defendants were charged with first-degree murder. The State's evidence disclosed that the deceased was killed by a shotgun owned by defendant Ham. The State offered evidence that less than a month before the charged crime occurred, defendant Ham's furniture was being removed from a rented mobile home by his landlord's son and Ham, by the use of a shotgun, forced the boy to return his possessions to the mobile home. We there held that this evidence was relevant and properly admitted to show possession of a shotgun by defendant Ham shortly before the charged crime took place.

The evidence here challenged was also admissible to contradict defendant's testimony. In *State v. Lewis*, 177 N.C. 555, 98 S.E. 309, the defendant was charged with the crime of rape. He offered testimony tending to show that he was sick and in bed during the week before and the week after the date that the alleged crime occurred. In rebuttal the State offered evidence that defendant had chased a Mrs. Loftin and tried to grab

her and that three nights thereafter he was seen peeping in her home. Finding no error in the admission of this evidence, this Court, speaking through Justice Walker, stated:

> The evidence admitted by the court was manifestly competent for the single purpose of contradicting the prisoner's statement and the testimony of his witnesses that he was sick for two weeks, including 17 January, 1918, as one of the days, and it was thus restricted by the judge. This assignment also must be disallowed.

We further note that defense counsel elicited testimony similar to that challenged during the cross-examination of the witness Blackwelder. The admission of testimony over objection is ordinarily harmless when defendant elicits similar testimony on cross-examination. *State v. Brown*, 272 N.C. 512, 158 S.E. 2d 354; *State v. Humbles*, 241 N.C. 47, 84 S.E. 2d 264.

For the reasons stated, this assignment of error is overruled.

Finally, defendant argues that the trial court erred in denying his motion for dismissal on grounds of former jeopardy.

Defendant was originally put on trial for first-degree murder before Judge James H. Pou Bailey at the 11 May 1976 Session of Cumberland Superior Court. On the third day of that trial, after the presentation of the State's case in chief, Judge Bailey allowed the State's motion to reopen its case for the purpose of introducing the testimony of Thomas Bernard Richardson, who was to be flown in from Texas. The trial judge allowed the State until 2:00 p.m. to produce this witness and recessed court at about 10:00 a.m. During this time Judge Bailey was informed by an attorney not appearing in the case that an unidentified woman had been observed talking loudly outside the courthouse in the presence of persons wearing juror badges. She had stated that it would be a shame to put anyone to death on the evidence in the case. Upon reconvening court at 2:00 p.m., Judge Bailey inquired of the jury whether anyone had overheard any comment regarding the possible penalties involved in this trial. Receiving no affirmative response, he again recessed court until the arrival of the State's additional witness, Thomas Bernard Richardson.

The witness Richardson arrived at 2:58 p.m. and the trial was resumed. After Richardson had testified, the following colloquy occurred:

COURT: Ladies and Gentlemen of the Jury, what I am about to say is in no way intended to be a criticism of you or anyone of you. We are trying this case in a very crowded setup. The toilet facilities for you and everybody else are obviously inadequate. Witnesses and people involved in this case, mingling up and down the halls, and I think talking fairly freely. Have any of you heard any comment from anybody, whether it was directed to you or just in passing, concerning this case or anybody in it?

JUROR D. H. POWELL: Yes sir.

\* \* \*

The remaining jurors were sent to the Jury Room and the juror Powell was taken into the Judge's Chambers where the following transpired:

\* \* \*

COURT: What was the comment?

POWELL: The comment was, quote: Unless there is more evidence produced than there has been, that man will never be found guilty by this jury.

COURT: Did he make any comment to whether the man was or was not guilty?

POWELL: No, Sir, he only made this comment that I told you at that time.

COURT: This afternoon session?

MR. BYRD: I believe it was between two and three o'clock, if it's the same time I remember.

POWELL: I think it was at the time when we was hanging loose, waiting for the State man to come, and that's why we were out in the hall, and this was when the statement was made.

COURT: And since that time, there has been additional evidence?

POWELL: Yes sir, since that time.

\* \* \*

COURT: My effort is to make sure the trial is fair to both sides.

POWELL: I was hoping that you would ask that question again. I didn't know what I was going to do if you were going to turn it over to the jury.

COURT: Let me ask you this. Do you feel, I don't want to know the details, but do you feel that you were influenced one way or the other by that comment?

POWELL: No Sir, but I want you to know that it was made.

COURT: I need to know it, because that's why I asked. I despise trying a case up here in this area, because it's so crowded, everybody pushed in together, and folks do talk. It's a very unsatisfactory situation.

Deputy Sheriff Charles Musselwhite, who had transported defendant to the courtroom that day, admitted that he had commented on the sufficiency of the State's evidence directly to the juror Powell. Although not in uniform at the time, he was wearing an identification badge on his shirt collar.

Following his conference with juror Powell and counsel, Judge Bailey entered the following findings and order:

COURT: Upon the resumption of the court at 2:00 on Wednesday, May 12, the presiding Judge was informed by an attorney of Fayetteville that during the lunch recess he had observed a person whose name is unknown to him, in front of the courthouse in the presence of some persons wearing juror badges, commenting on the possibility of a death penalty in this case. That upon questioning the jurors, none engaged to try this case acknowledged having heard said comments. The Court further observes that on the third floor of the Cumberland County Courthouse, there is little or no room for traffic circulation; that the witnesses both for the State and for the Defendant have been closely in the presence of the jurors in this case, both before and after Court on Tuesday and Wednesday, that the Court has no assurance that comments have not been made

in the presence of the jurors that might influence the jurors in this case; that one juror has acknowledged overhearing a comment by a law enforcement officer as to the quality of the State's evidence in this case; that at the time the comment was made, the State's evidence was not sufficient to send the case to the jury. That since that time, a witness brought in for this trial by chartered plane from San Antonio, Texas has testified to an extra-judicial admission of the [defendant] that he killed someone; which evidence has materially strengthened the State's case. The Court feels that he is unable to guarantee the integrity of the jury, not by reason of any known wrongdoing on the part of the jurors, but due to the nature of the evidence in this case, and the necessity of bringing a witness in from Texas, which fact is known to the jury. The Court is of the opinion and so finds that the verdict in this case would invariably and inevitably be suspect. The Court finds and determines that to permit the case to continue under these circumstances would be contrary to the interest of justice, prejudicial both to the State and to the Defendant. The Court of its own motion elects to withdraw a juror and declare a mistrial. To the entry of the above order, the Defendant in apt time objects; objection overruled.

At the second trial of this case, Judge Clark conducted a hearing on defendant's motion to dismiss. After making findings and conclusions similar to those contained in Judge Bailey's order, Judge Clark entered an order denying defendant's motion.

It is a fundamental principle of the common law, guaranteed by our Federal and State Constitutions, that no person may be twice put in jeopardy of life or limb for the same offense. U. S. Const. Amend. V; N. C. Const. Art. I, § 19; *State v. Cutshall,* 278 N.C. 334, 180 S.E. 2d 745.

[3] Jeopardy attaches when a defendant in a criminal prosecution is placed on trial: (1) on a valid indictment or information, (2) before a court of competent jurisdiction, (3) after arraignment, (4) after plea, and (5) when a competent jury has been empaneled and sworn. *State v. Birckhead,* 256 N.C. 494, 124 S.E. 2d 838. Nevertheless, a subsequent trial of a defendant, following the termination of earlier proceedings upon an order of mistrial, is not precluded by a plea of former jeopardy where the mistrial was granted, over defendant's ob-

jections, due to "a physical necessity or the necessity of doing justice." *State v. Beal,* 199 N.C. 278, 154 S.E. 604. The United States Supreme Court, speaking through Justice Story in the landmark case of *United States v. Perez* (a capital case), 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165, fashioned the test to be applied upon a plea of former jeopardy:

> We think, that in all cases of this nature, the law has invested Courts of Justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office. . . .

This rule of "necessity" has consistently been adhered to in subsequent decisions of that Court. *United States v. Dinitz,* 424 U.S. 600, 47 L.Ed. 2d 267, 96 S.Ct. 1075; *Illinois v. Somerville,* 410 U.S. 458, 35 L.Ed. 2d 425, 93 S.Ct. 1066; *United States v. Jorn,* 400 U.S. 470, 27 L.Ed. 2d 543, 91 S.Ct. 547; *Downum v. United States,* 372 U.S. 734, 10 L.Ed. 2d 100, 83 S.Ct. 1033; *Gori v. United States,* 367 U.S. 364, 6 L.Ed. 2d 901, 81 S.Ct. 1523; *Wade v. Hunter,* 336 U.S. 684, 93 L.Ed. 974, 69 S.Ct. 834; *Simmons v. United States,* 142 U.S. 148, 35 L.Ed. 968, 12 S.Ct. 171.

In *Somerville* the respondent was brought to trial on a defective indictment which could not have been cured by amendment under existing Illinois law. The trial judge declared a mistrial over defendant's objection. After being reindicted, tried, and convicted, the defendant petitioned for a writ of habeas corpus alleging double jeopardy. This petition was granted by the Seventh Circuit Court of Appeals. The United

States Supreme Court allowed certiorari to review that decision and reversed. The plurality opinion quoted the *Perez* standard with approval and emphasized the breadth of the trial judge's discretion with these quotes:

. . . In *Wade v. Hunter*, 336 U.S. 684 (1949), the Court, in reaffirming this flexible standard, wrote:

"We are asked to adopt the *Cornero [v. United States*, 48 F. 2d 69,] rule under which petitioner contends the absence of witnesses can never justify discontinuance of a trial. Such a rigid formula is inconsistent with the guiding principles of the *Perez* decision to which we adhere. Those principles command courts in considering whether a trial should be terminated without judgment to take 'all circumstances into account' and thereby forbid the mechanical application of an abstract formula. The value of the *Perez* principles thus lies in their capacity for informed application under widely different circumstances without injury to defendants or to the public interest." *Id.*, at 691.

Similarly, in *Gori v. United States*, 367 U.S. 364 (1961), the Court again underscored the breadth of a trial judge's discretion, and the reasons therefor, to declare a mistrial.

"Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." *Id.*, at 368.

Our Court has characterized the types of necessity which will justify a reprosecution following a declaration of mistrial. In *State v. Crocker*, 239 N.C. 446, 80 S.E. 2d 243, Justice Bobbitt (later Chief Justice) summarized:

The two kinds of necessity, *i.e.*, "physical necessity" and the "necessity of doing justice" were so classified by *Boyden, J.*, in *S. v. Wiseman*, 68 N.C. 203. As to "physical necessity," he said: "One class may not improperly be termed physical and absolute; as where a juror by a sudden attack of illness is wholly disqualified from proceeding with the trial; or where the prisoner becomes insane

during the trial, or where a female defendant is taken in labor during the trial." As to "necessity of doing justice," he said that this arises from the duty of the court to "guard the administration of justice from fraudulent practices; as in the case of tampering with the jury, or keeping back the witnesses on the part of the prosecution."

*Accord: State v. Cutshall, supra; State v. Birckhead, supra.*

[4] Obviously in instant case we must narrow our consideration to the question of whether Judge Bailey's declaration of a mistrial, *sua sponte*, was born of "the necessity of doing justice." Such a decision would be well within the trial judge's discretion when faced with "the occurrence of some incident of a nature that would render impossible a fair and impartial trial under the law." *State v. Crocker, supra.* In capital cases the trial court must make findings of fact and place them in the record so that the court's action may be reviewed on appeal. *State v. Cutshall, supra; State v. Tyson,* 138 N.C. 627, 50 S.E. 456.

Here, had the law enforcement officer expressed an opinion that the jury would find defendant guilty upon the then-existing evidence, there would, in all probability, be a unanimity of opinion that the trial judge acted correctly. We find no authority which holds that the test of "necessity of doing justice" exists solely for the benefit of a defendant. It is fundamental in our system of jurisprudence that each party to an action is entitled to a fair and impartial trial. In *Simmons v. United States, supra,* the Court recognized this fundamental principle when it stated:

> There can be no condition of things in which the necessity for the exercise of this power [to declare a mistrial] is more manifest, in order to prevent the defeat of the ends of public justice, than when it is made to appear to the court that . . . by reason of outside influences brought to bear on the jury pending the trial, the jurors or any of them are subject to such bias or prejudice as not to stand impartial between the government and the accused. As was well said by Mr. Justice Curtis in a case very like that now before us, "It is an entire mistake to confound this discretionary authority of the court, to protect one part of the tribunal from corruption or prejudice, with the right of challenge allowed to a party. And it is, at least, equally

a mistake to suppose that, in a court of justice, either party can have a vested right to a corrupt or prejudiced juror, who is not fit to sit in judgment in the case." *United States v. Morris*, 1 Curtis C. C. 23, 37.

Our own Court in considering exceptions to an order of mistrial in *State v. Cain*, 175 N.C. 825, 95 S.E. 930, also recognized that principle of evenhanded justice with this succinct statement: "The object of a trial is to acquit the innocent and convict the guilty."

The recent decisions of the United States Supreme Court seem to emphasize that the double jeopardy clause protects a defendant from prosecutory actions which tend to provoke mistrial requests and from bad faith conduct by the judge or the prosecutor which subjects the defendant to multiple trials for the purpose of affording the State a more favorable opportunity to convict. *United States v. Dinitz, supra; Illinois v. Somerville, supra.*

In the case *sub judice* there is nothing to indicate that the prosecutor did anything to provoke a mistrial or that the trial judge acted in bad faith so as to give the State a more favorable position or to lessen defendant's opportunity for an acquittal.

It is unchallenged that an expression of opinion by a law enforcement officer as to the weakness of the State's case had reached the jury box. The juror's statement that he would not be prejudiced by this remark would not, standing alone, prevent the trial judge from exercising his discretion and declaring a mistrial. In *Whitfield v. Warden of Maryland House of Correction*, 486 F. 2d 1118, the Fourth Circuit Court of Appeals aptly stated:

. . . [A] trial judge need not explore whether the extraneous communication has in fact prejudiced the juror. When a judge concludes that on the basis of facts and reasonable inferences to be drawn from the facts that a juror has been exposed to information that might taint his verdict, he may withdraw the juror in the exercise of his sound discretion without unconstitutionally subjecting the defendant to double jeopardy. . . .

Under the circumstances disclosed by his findings, we cannot say that Judge Bailey's declaration of a mistrial was not

required by the "necessity of doing justice." Therefore, defendant's subsequent plea of former jeopardy was properly denied by Judge Clark.

No error.