STATE OF NORTH CAROLINA v. CHARLES JOHNSON

No. 786SC1115

(Filed 5 June 1979)

1. **Constitutional Law § 53— speedy trial—delay between mistrial and retrial**

   Defendant was not denied his constitutional right to a speedy trial by the delay between a mistrial in September 1975 and his retrial in April 1978 where the record shows that the delay was primarily for the convenience of defense counsel.

2. **Criminal Law § 128.2; Jury § 9— substitution of juror—alleged contribution to hung jury—absence of evidence**

   Defendant's contention that the court's allegedly improper substitution of Juror No. 13 for Juror No. 12 in his prior trial because Juror No. 12 had been contacted by defendant's family contributed to the "hung" jury in that case and that the court's declaration of a mistrial was, therefore, erroneous is conjectural and unsupported by the evidence. Furthermore, any errors in the first trial must be deemed harmless since defendant received a new trial.

3. **Criminal Law § 128.2— inquiry as to fruitfulness of further deliberation—mistrial because of hung jury**

   The trial court did not abuse its discretion in making inquiry of the jury as to whether further deliberation would be fruitful or in declaring a mistrial because of a "hung" jury when the jury foreman stated that he did not believe the jury would be able to agree upon further deliberation.

4. **Criminal Law §§ 102.5, 128.2— improper questions to character witness—mistrial**

   The possible prejudicial effect in this murder trial of the private prosecutor's two improper questions to defendant's character witness as to whether he knew defendant had been convicted in Halifax County 21 times could not be cured by the trial court's instruction that they be disregarded, and the court should have granted defendant's motion for a mistrial, where the evidence of defendant's guilt was not overwhelming, and it appears the questions were not asked out of ignorance of the established rules of evidence.

APPEAL by defendant from *Rouse, Judge*. Judgment entered 28 April 1978 in Superior Court, HALIFAX County. Heard in the Court of Appeals 26 March 1979.

Defendant was indicted and tried for the first-degree murder of Milton Richardson on or about 23 April 1975. The case was originally tried at the September 1975 Session of Criminal Court in Halifax County. However, because the jury in that case was unable to reach a unanimous verdict with respect to defendant's guilt or innocence, a mistrial was declared by the trial court. The case was eventually called for retrial 24 April 1978. That trial resulted in defendant's being convicted of second-degree murder, and he was sentenced to a term of not less than 28 years nor more than 30 years in the State Prison. Defendant appeals, assigning as error the denial of two pretrial motions and the denial of his motion for a mistrial.

Facts necessary for decision are summarized in the opinion below.

*Attorney General Edmisten, by Assistant Attorney General Patricia B. Hodulik, for the State.*

*Josey, McCoy & Hanudel, by C. Kitchin Josey, for defendant appellant.*

MORRIS, Chief Judge.

[1] Defendant's first assignment of error is directed to the trial court's denial of his motion to dismiss for failure of the prosecution to grant to defendant a speedy trial. Defendant does not rely upon the recently enacted Speedy Trial Act, G.S. 15A-701 *et seq.*, but his contention is based upon the constitutionally guaranteed right to a speedy trial. The "[i]nterrelated factors to be considered in determining whether a defendant has been denied his constitutional right to a speedy trial are: (1) The length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to defendant resulting from the delay." *State v. Smith*, 289 N.C. 143, 148, 221 S.E. 2d 247, 250 (1976). The burden is upon the defendant who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution. *Id.* Defendant has fallen far short of sustaining his burden. The record indicates conclusively, and the trial court so found, that the delay from the

declaration of a mistrial in defendant's first trial until the trial was calendared for the January 1978 session of court was primarily for the convenience of the defense counsel. Defendant has not excepted to that finding of the trial court. The record indicates that during the delay one of the defense attorneys had been incapacitated from February 1976 until January 1977 and that he had requested a delay. Furthermore, defendant's other counsel served as a State Legislator, and for the convenience of counsel, the district attorney delayed all of his cases while the legislature was in session. The record is entirely devoid of any indication that the delay was arbitrary and oppressive or the result of deliberate prosecution efforts to hamper the defense. This assignment of error is overruled.

Defendant next contends that the trial court erred in denying his motion to dismiss the action on the grounds that the second trial would subject defendant to double jeopardy. He contends that, because the trial court improperly granted, on its own motion and without defendant's consent, the mistrial in the former case, defendant may not be brought to trial again on the same charges. The circumstances surrounding the mistrial in the first action are summarized as follows: Defendant was on trial during the September 1975 session of court. At the conclusion of Judge Cowper's charge to the jury, he excused Juror No. 12 and substituted alternate Juror No. 13 when it was brought to his attention that Juror No. 12 had been contacted by a member of defendant's family. With the jury present, the trial court placed the following statement in the record after a conference with the juror at the bench:

> "COURT: Take this. At the end of the Judge's charge to the jury the Court, in its discretion released Juror No. 12, Columbus Jefferson, for the reason that he had indicated to the Court that he had been contacted by a member of the defendant's family. The Court does not feel that the juror is prejudiced in any way, but that it might be best to substitute No. 13, Richard Hawkins, Jr. to replace No. 12 and be seated as a regular juror."

The jury retired at 3:14 p.m. and returned to the courtroom at 9:00 p.m. at the request of the court. The following exchange appears in the record:

"COURT: Please answer me. Members of the jury, you obviously have not been able to agree on a verdict, is that correct?

FOREMAN: Yes, sir.

COURT: Will you tell me how you stand without telling me which way you stand? How do you stand?

FOREMAN: Ten to two.

COURT: Do you feel that you will be able to agree on a verdict?

FOREMAN: I don't think so, Your Honor.

COURT: I don't want to punish you, and if you honestly feel that you are unable to agree on a verdict, I will withdraw a juror, Juror No. 12, and declare a mistrial and I appreciate your efforts in this matter. The case will have to be tried again in another court and I will declare a mistrial. I will not make you stay any longer.

Court adjourned."

[2]  Defendant argues at length concerning the alleged errors the trial court committed in the *first* trial by substituting Juror No. 13 for Juror No. 12 allegedly without justification, and in stating the reason for that substitution before the jury. It is apparently defendant's position that this improper substitution contributed to the "hung" jury and prevented defendant's acquittal of all charges. Defendant argues that justice did not require the replacement of Juror No. 12, since the judge found he was not prejudiced in any way. Therefore, he contends, the declaration of a mistrial was not based on a physical necessity or necessity to do justice and was improperly granted. *See State v. Shuler*, 293 N.C. 34, 235 S.E. 2d 226 (1977). Although counsel's argument is quite inventive, and such resourcefulness is not unappreciated, it is conjectural and unsupported by the evidence. Furthermore, any errors committed at the first trial must be deemed harmless in light of the fact that defendant did receive a new trial.

[3]  Therefore, the sole remaining question with respect to defendant's plea of former jeopardy is whether the mistrial granted upon the trial court's own motion because of the "hung" jury was

State v. Johnson

proper. The defendant contends that it was an abuse of discretion for the court not to make further inquiry concerning whether further deliberation would be fruitful. This argument was answered directly by our Supreme Court in *State v. Battle*, 279 N.C. 484, 183 S.E. 2d 641 (1971). We quote:

> "When the jurors declare their inability to agree, it must be left to the trial judge, in the exercise of his judicial discretion, to decide whether he will then declare a mistrial or require them to deliberate further. *State v. Trippe*, 222 N.C. 600, 24 S.E. 2d 340. This is always a delicate question. Either releasing the jury 'too soon' or holding it 'too long' will bring charges of an abuse of discretion. 'But, after all, they [the trial judges] have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office.' *United States v. Perez, supra* at 580, 6 L.Ed. at 165.
>
> After a jury has declared its inability to reach a verdict, the action of the trial judge in declaring a mistrial is reviewable only in case of gross abuse of discretion, and the burden is upon defendant to show such abuse. . . ." 279 N.C. at 486, 183 S.E. 2d at 643. *See also State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978).

Defendant has demonstrated no gross abuse of discretion. This assignment of error is overruled.

[4] Defendant's remaining assignment of error is addressed to the trial court's denial of defendant's motion for a mistrial in the second trial because of improper questions propounded by the private prosecutor to a character witness produced by defendant. Arthur Lee Wollet, who had known defendant all his life and for whom defendant had worked as a service station attendant, testified that defendant has a good reputation in the community in which he lives. On cross-examination of the witness, the following appears in the record:

> "Q. If it came to your attention, Mr. Wollet, as a fact that Mr. Charles Johnson, who you have just given a good reputation

in the community in which he lives, has been convicted of twenty-one crimes in Halifax County, would you still say that he had . . .

MR. CLARK: Object.

MR. MARTIN: Please let me finish, Your Honor.

COURT: Objection sustained.

Q. Do you know that he has been convicted in Halifax County twenty-one times?

MR. CLARK: Objection, move for a mistrial.

COURT: Objection sustained.

COURT: Ladies and gentlemen, I will let you retire to the jury room.

COURT: Objection sustained. Let the records show the Court admonished counsel not to ask similar questions again.

MR. JOSEY: We move for a mistrial, Your Honor.

COURT: Motion for a mistrial is denied. Let the jury come back, please.

EXCEPTION NO. 6

COURT: Ladies and gentlemen of the jury, the Court has just sustained the objection made to the questions or comments of counsel. The Court has just sustained an objection to the question or questions or statements by counsel for the State. I want to instruct the jury that you must disregard those questions and you must disregard the statements of counsel for which I sustained the objection. The statements or questions of counsel are not evidence in the case and they are not to be considered by the jury as evidence in the case, and you are to completely dismiss them from your mind and do not consider questions of counsel where the objections are sustained and specifically the last two questions asked by counsel for the State to which I sustained the objection. You may continue your cross examination."

Defendant contends that the question twice asked of the witness concerning the defendant's previous alleged convictions

not only was objectionable and incompetent, it placed before the jury matters so prejudicial that the attempt to cure the error could not have removed the statements from the jurors' minds. Furthermore, defendant asserts that the prosecuting attorney intentionally violated his professional duty to avoid placing before the jury incompetent and prejudicial matters not legally admissible in evidence.

The rule is well established in North Carolina that a character witness may not be questioned concerning particular acts of misconduct by the defendant, nor may he be asked whether he would consider a person guilty of such misconduct to have good character. *State v. Hunt*, 287 N.C. 360, 215 S.E. 2d 40 (1975). Although the rule is apparently contrary to the majority rule in this country, it is said that the rule is a good one due to the relative lack of value of such evidence compared to the likelihood of its introduction for the improper purpose of having it considered as substantive evidence of the misconduct itself. *See generally* 1 Stansbury's N.C. Evidence § 115 (Brandis rev. 1973). Because the witness properly was not permitted to respond to the question, the issue before this Court is whether it was error for the trial court not to grant a mistrial once the comments of the prosecutor were already before the jury. Whether instructions can cure the prejudicial effect of such errors must depend primarily on the nature of the evidence and the particular circumstances of each case. *State v. Hunt, supra; State v. Crowder*, 285 N.C. 42, 203 S.E. 2d 38 (1974); *State v. Strickland*, 229 N.C. 201, 49 S.E. 2d 469 (1948). In resolving this question, we must keep in mind that " 'our system for the administration of justice through trial by jury is based upon the assumption that the trial jurors are [persons] of character and sufficient intelligence to fully understand and comply with the instructions of the court, and are presumed to have done so.' *State v. Ray*, 212 N.C. 725, 194 S.E. 482 (1938)." *State v. Crowder*, 285 N.C. at 49, 203 S.E. 2d at 43.

Based upon the particular circumstances of this case, we are of the opinion that the possible prejudicial effect of the prosecuting attorney's comments could not be cured by the trial court's instructions that they be disregarded. The evidence in this case is not so overwhelming as to render the prejudicial effect insignificant. *Compare State v. Crowder, supra.* This is apparent

from the fact that the first trial resulted in a "hung" jury and from the conflicting evidence in the present case. Additionally, private prosecutor asked the court, after defendant's objection, to let him finish, but the court sustained the objection. After the court sustained defendant's objection, the private prosecutor, in the face of the sustaining of the objection, again asked the witness whether he knew defendant had been convicted in Halifax County 21 times. The phraseology was, in all material aspects, identical to that used in the question to which objection had *just* been sustained. In this case, it would appear that the improper questions propounded by the prosecuting attorney, in this instance a private prosecutor with broad experience both as a trial lawyer and a trial judge, were not made out of ignorance of the established rules of evidence in this State. If the second question was asked before the court sustained the objection, which can certainly happen in the course of a hotly contested trial, the record does not so indicate. Finally, the questions by the prosecutor were not asked on cross-examination of defendant when such facts were admissible, defendant having testified that he had been convicted only of damage to personal property, assault, and assault on a female.

In our opinion, although the able trial judge quickly responded with an attempt to nullify the impact of the improper questions of the private prosecutor, the particular facts of this case compel us to grant defendant a

New trial.

Judges CLARK and ARNOLD concur.