Curtis D. SHULER, Appellant,

v.

Samuel GARRISON, Warden, North Carolina Central Prison, Appellee.

No. 80–6066.

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1980.

Decided Sept. 10, 1980.

Thomas F. Loflin, III, Durham, N. C. (Loflin, Loflin & Acker, Durham, N. C., on brief), for appellant.

Thomas J. Ziko, Associate Atty., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Richard N. League, Asst. Atty. Gen., Raleigh, N. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, PHILLIPS, Circuit Judge and HOFFMAN, United States District Judge.*

ALBERT V. BRYAN, Senior Circuit Judge:

Curtis Shuler appeals the denial by the District Court of habeas corpus after he, assertedly, had been subjected to double jeopardy in the State courts of North Carolina where he was retried for murder following the declaration of a mistrial. We affirm on the opinion of the District Judge. *Shuler v. Garrison*, No. 79–0213–HC (E.D. N.C. Aug. 17, 1979).

Indicted for first degree murder,** Shuler went to trial on May 11, 1976 in the Superior Court of Cumberland County. A 12–person jury was empanelled, with one alternate. The second day of the trial, the Court was recessed to enable the State to produce a witness. An attorney not involved in the case informed the judge that during the recess he had heard a woman outside the courtroom, in the presence of persons wearing juror badges, say: "It would be a shame to sentence a man to die on the evidence in this case." When asked if any of them had overheard any comment regarding the case, none of the jurors responded affirmatively.

A further recess was ordered to await the arrival of the State's witness. During this break, juror D. H. Powell and Deputy Sheriff Musselwhite, had a conversation in which the deputy said: "[U]nless there is more evidence produced than there has been, that man [Shuler] will never be found guilty by this jury." The District Attorney immediately approached the deputy and cautioned him against speaking to any member of the panel.

Upon conclusion of the evidence, the judge again queried the jury about the beyond–the–court remarks. Then it was that juror Powell related hearing some comments about the case. In chambers, he recounted his conversation with the deputy and gave assurance that he had not been influenced by the incident. Rather than substitute the alternate juror, the judge *sua sponte* declared a mistrial, noting the crowded conditions in the courthouse and the consequent intermingling of bystanders, witnesses and jurors. He added:

> The Court feels that he is unable to guarantee the integrity of the jury, not by reason of any known wrong doing on the part of the jurors, but due to the nature of the evidence in this case, and the necessity of bringing a witness in from Texas, which fact is known to the jury. The Court is of the opinion and so finds that the verdict in this case would invariably and inevitably be suspect. The Court finds and determines that to permit the case to continue under these circumstances would be contrary to the interest of justice, prejudicial both to the State and to the Defendant. The Court of its own motion elects to withdraw a juror and declare a mistrial.

Timely objection of the defendant was overruled.

---

* Sitting by designation, from the Eastern District of Virginia.

** First degree murder was a capital offense in North Carolina at the time of the initial trial which occurred before *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), had been decided.

In a second trial, after refusal of Shuler's motion to dismiss on the grounds of double jeopardy, a verdict of guilt of first–degree murder was returned; a judgment of conviction with a life sentence was passed and, on appeal, affirmed by the Supreme Court of North Carolina. *State v. Shuler*, 293 N.C. 34, 40, 235 S.E.2d 226, 231 (1977) (quoting from the trial transcript).

Shuler's petition to the United States District Court for habeas was rejected on the authority of *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), and *Whitfield v. Warden of Maryland House of Correction*, 486 F.2d 1118 (4th Cir. 1973). The Court concluded that "the trial court's declaration of a mistrial was not improvidently granted and consequently, Petitioner's retrial did not violate the double jeopardy clause of the Fifth Amendment." *Shuler v. Garrison*, No. 79–0213–HC (E.D.N.C. Aug. 17, 1979).

█ Appellant now relies heavily on our opinion in *Harris v. Young*, 607 F.2d 1081 (1979), decided after the District Court's instant dismissal. There, Harris' first trial for murder, before the State court without a jury, had ended upon the Court's *sua sponte* declaration of a mistrial for non–compliance with its discovery directions. In a second submission before the same court, again Harris was found guilty of murder. With appeal to the Supreme Court of Virginia unsuccessful, he petitioned the United States District Court for habeas corpus relief on the ground of double jeopardy. Although the Federal court denied the relief sought, we reversed because there was no "manifest necessity," as originally articulated in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), warranting a mistrial. While the standard has not been applied rigidly to require absolute necessity, a "high degree" of need coupled with the exercise of sound discretion by the trial judge must be shown. *Harris v. Young*, 607 F.2d at 1085 (citing *Arizona v. Washington*, 434 U.S. at 506, 514, 98 S.Ct. at 830, 834). In *Harris*, this court determined that there were "less drastic alternatives" available which could have been utilized to prevent ordering a mistrial and a subsequent second proceeding. 607 F.2d at 1085.

█ Cases positing the double jeopardy issue turn on factual determinations, and we find the circumstances before us to be distinguishable from *Harris*. After two reports of comments to members of the jury, it was impossible for the State judge to ascertain what the jury, including the alternate juror, may have heard, especially considering the confused and crowded conditions outside the courtroom. Since any verdict would have been suspect, even if a substitute had been appointed for juror Powell, the judge properly exercised his discretion to order a new trial. The Supreme Court of North Carolina's opinion in this case contributed richly to the resolution of the issue now also before us. 293 N.C. 34, 235 S.E.2d 226.

Affirmed.